No. 25-13060

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

Isis Benjamin, et al.,
*Plaintiffs-Appellees*,

v.

Commissioner Tyrone Oliver, in his official capacity, et al.,
*Defendants-Appellants*.

Appeal from the U.S. District Court for the
Northern District of Georgia, No. 1:25-cv-04470 (Calvert, J.)

## DEFENDANTS-APPELLANTS' REPLY IN SUPPORT OF TIME-SENSITIVE MOTION FOR STAY PENDING APPEAL

Christopher M. Carr
 *Attorney General*
Stephen J. Petrany
 *Solicitor General*
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia, 30334
404-458-3408
spetrany@law.ga.gov

Jeffrey M. Harris
Rachael C.T. Wyrick
Julius Kairey
Zachary P. Grouev*
Consovoy McCarthy PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
jeff@consovoymccarthy.com

*Supervised by principals of the firm admitted to practice in Virginia*

*Counsel for Defendants-Appellants*

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1 and 26.1-2, the undersigned counsel certifies that the following listed persons and parties may have an interest in the outcome of this case:

1. Benjamin, Isis (Yohansan Jovan Stewart)[1] – Appellee

2. Bentley, Michael J. – Counsel for Defendant Centurion of Georgia, LLC

3. Bondurant Mixson & Elmore, LLP – Counsel for Appellees

4. Bradley Arant Boult Cummings, LLP-MS – Counsel for Defendant Centurion of Georgia, LLC

5. Calvert, Honorable Victoria Marie – Judge for the United States District Court for the Northern District of Georgia

6. Center For Constitutional Rights – Counsel for Appellees

7. Centurion of Georgia, LLC – Defendant

8. Consovoy McCarthy PLLC – Counsel for Appellants

9. Doe, John – Appellee

10. Early, Emily – Counsel for Appellees

11. Ezie, Andrea Chinyere – Counsel for Appellees

12. Felder, Korbin – Counsel for Appellees

13. Frankson, Michael Geoffrey – Counsel for Defendant Centurion of Georgia, LLC

14. Grouev, Zachary P. – Counsel for Appellants

---

[1] Plaintiffs' complaint uses self-declared names that differ from the names in their official GDC records. Defendants will refer to them by their names in official records.

15. Harris, Jeffrey M. – Counsel for Appellants

16. Huff, Powell & Bailey, LLC – Counsel for Defendant Centurion of Georgia, LLC

17. Horton, Sylvester (Sylvester Horton) – Appellee

18. Kairey, Julius – Counsel for Appellants

19. Madison, Naeomi (Terrell Montiel Madison) – Appellee

20. Mardis, Dr. Marlah – Appellant

21. Oliver, Tyrone – Appellant

22. Petrany, Stephen J. – Counsel for Appellants

23. Sauls, Randy – Appellant

24. Seals, Amanda Kay – Counsel for Appellees

25. Sellers, Matthew – Counsel for Appellees

26. Wilson, Brynn – Appellee

27. Wyrick, Rachael C.T. – Counsel for Appellants

28. Zhu, Celine – Counsel for Appellees

Dated: September 23, 2025         */s/ Jeffrey M. Harris*
                                                        Counsel for Defendants-Appellants

# TABLE OF CONTENTS

Certificate of Interested Persons ...................................................................................1

Argument.........................................................................................................................2

    I.     Defendants made a strong showing of likelihood of success..........................2

          A.     Plaintiffs primarily rely on dicta and out-of-circuit decisions from before *Eknes-Tucker* and *Skrmetti*...............................................................2

          B.     Plaintiffs misread *Ancata*. .........................................................................4

          C.     The preliminary injunction severely disrupts the status quo. ...............5

          D.     Plaintiffs cannot overcome the PLRA's limits on prospective relief. ............................................................................................................7

          E.     Plaintiffs' forfeiture arguments are meritless. .......................................7

    II.    Defendants will be irreparably harmed in the absence of a stay.....................9

    III.   The balance of the equities supports granting a stay. .......................................9

Conclusion ....................................................................................................................11

Certificate of Compliance ...........................................................................................12

Certificate of Service....................................................................................................13

Deliberate indifference under the Eighth Amendment is "a high standard." *Bayse v. Ward*, 147 F.4th 1304, 1311 (11th Cir. 2025) (cleaned up). Denials of medical care meet this "stringen[t]" bar "'only when [they are] so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020).

Far from "shock[ing] the conscience," SB185 reflects the Legislature's reasoned decision not to use taxpayer funds to provide sex-change interventions that have been subject to "fierce scientific and policy debates about the safety, efficacy, and propriety of medical treatments in an evolving field." *United States v. Skrmetti*, 145 S.Ct. 1816, 1837 (2025). Like the cross-sex hormone bans for minors upheld by this Court and the Supreme Court, SB185 reflects a reasonable resolution of an issue "'fraught with medical and scientific uncertainties.'" *Eknes-Tucker v. Governor of Al.*, 114 F.4th 1241, 1248 (11th Cir. 2024) (en banc) (Lagoa, J., concurring).

The declarations of Plaintiffs' treating physicians underscore that implementing SB185 has not resulted in "grossly incompetent [or] inadequate" care. Rather, Defendants undertook substantial efforts to ensure that inmates with gender dysphoria would continue to receive care, even if it was not the precise interventions that Plaintiffs demanded. That is not deliberate indifference and the district court's sweeping preliminary injunction holding otherwise should be stayed.

1

# ARGUMENT

I. **Defendants made a strong showing of likelihood of success.**

   A. **Plaintiffs primarily rely on dicta and out-of-circuit decisions from before *Eknes-Tucker* and *Skrmetti*.**

Plaintiffs dispute the "novel[ty]" of the district court's sweeping injunction, arguing that other courts have enjoined "blanket bans on hormone therapy in prisons." Opp.7. In support, they cite a Seventh Circuit case, *Fields v. Smith*, 653 F.3d 550 (7th Cir. 2011), a District of Idaho case, *Robinson v. Labrador*, 747 F. Supp. 3d 1331 (D. Idaho 2024), and a motion-to-dismiss order stating that gender dysphoria "requir[es] treatment conforming to" WPATH's "Standards of Care," *Diamond v. Owens*, 131 F. Supp. 3d 1346, 1354-75, 1382 (M.D. Ga. 2015) (case mooted before appeal). But decisions that predate *Skrmetti* and *Eknes-Tucker* have nothing to say about the state of the law today. *See, e.g.*, *Eknes-Tucker*, 114 F.4th at 1247-71 (Lagoa., J., concurring). Indeed, when the decisions Plaintiffs cite were issued, many courts were *also* erroneously enjoining the cross-sex hormone bans for minors that *Skrmetti* and *Eknes-Tucker* ultimately upheld.

The cases cited in dicta in *Keohane v. Florida Department of Corrections Secretary* have the same problem: their use of WPATH's so-called "Standards of Care" to set the constitutional standard has been repudiated by more recent precedent. *See* 952 F.3d 1257, 1267 (11th Cir. 2020) (citing *Fields* and two district court decisions from 2012 and 2018). And, although Plaintiffs assert that *Keohane*'s discussion of Florida's since-repealed policy is "a general pronouncement of established law, not dicta." Opp.7-8 & n.7, they

2

cannot dispute that federal courts have "no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before [them].'" *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011). In all events, even if this part of *Keohane* were not dicta, SB185 does not distinguish between inmates receiving hormones before incarceration and those requesting them afterwards, which the panel suggested was irrational. SB185 treats all inmates equally based on the legislature's reasonable resolution of the hotly contested issue of using cross-sex hormones to treat gender dysphoria.

Plaintiffs also try to brush aside *Eknes-Tucker* and *Skrmetti* because those cases involved minors. Opp.10-11. But, as Defendants explained, those cases "underscore that state legislatures have broad authority to make policy regarding sex-change interventions and that the Constitution does not dictate outcomes in this controversial and ever-evolving area." Mot.10-11. *Skrmetti* and *Eknes-Tucker* are clear that legislatures have "'wide discretion'" to act "'in areas where there is medical and scientific uncertainty,'" and may rationally decide that certain sex-change interventions should be regulated more strictly or even banned outright. *Skrmetti*, 145 S.Ct. at 1836; *Eknes-Tucker*, 114 F.4th at 1260 (Lagoa, J., concurring). The General Assembly's judgment in enacting SB185 was entirely reasonable given the weak evidentiary base for cross-sex hormonal interventions and the "ongoing debate among medical experts regarding the risks and benefits" of such interventions. *Skrmetti*, 145 S.Ct. at 1836.

3

### B. Plaintiffs misread *Ancata*.

Plaintiffs argue that the "refusal to 'properly evaluate' class members is itself a Constitutional violation." Opp.7 (quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)). But *Ancata* did not establish a bright-line rule that refusing to provide evaluations for a certain category of interventions is a freestanding Eighth Amendment injury. This Court recently characterized *Ancata* as such: "prison employees (1) failed to provide care they subjectively believed was necessary, (2) intentionally failed to provide care because the inmate couldn't pay for it, and (3) provided cursory medical treatment for a serious medical condition." *Donald v. Norris*, 131 F.4th 1255, 1267 (11th Cir. 2025). That is nothing like the freestanding "failure-to-evaluate" injury Plaintiffs assert here, which is unrelated to whether the Eight Amendment compels prison officials to *actually provide* the demanded interventions.

Misreading *Ancata* this way would have far-reaching effects. For example, Georgia law makes it a felony for a physician to assist in the commission of a suicide. O.C.G.A. §16-5-5. On Plaintiffs' view, a class of inmates could challenge that statute as a "blanket treatment ban on [euthanasia], regardless of medical necessity." Opp.6. That is not the law. Under both the Eighth Amendment and PLRA, the question is whether a *specific plaintiff* has a constitutional right to a *specific intervention*. Given Plaintiffs' view that essentially all inmates with gender dysphoria who demand hormones should be given them, it is highly unlikely that they would accept as legitimate (or deem their injury redressed) if they received an "evaluation" that did not recommend that intervention.

4

Even if *Ancata* meant what Plaintiffs suggest, this Court recently explained that the decision must be read narrowly in light of later cases emphasizing that a *reasonable response* is not deliberate indifference. *Donald* distinguished *Ancata* because it did not "contemplate" that prison officials could defeat a deliberate indifference claim by showing that they "'responded reasonably to the risk,'" *Donalds*, 131 F.4th at 1267. SB185 is at the very least "a reasonable response," Mot.13, to the poor evidentiary base for cross-sex hormonal interventions and the "ongoing debate among medical experts regarding the risks and benefits" of such interventions, *Skrmetti*, 145 S.Ct. at 1836.

### C. The preliminary injunction severely disrupts the status quo.

Plaintiffs cite *Robinson v. Attorney General* for the proposition that this Court has sometimes declined to stay "a status quo preliminary injunction." Opp.1 (citing 957 F.3d 1171, 1180 (11th Cir. 2020)). But *Robinson* only underscores that the district court's order here is anything but "a status quo preliminary injunction." *Id.*

In *Robinson*, the plaintiffs sought a temporary restraining order against abortion restrictions in a COVID-19-era public health order issued on March 27, 2020. *Id.* at 1174-75. The plaintiffs moved for a TRO "three days after the … order was issued" and the district court "held a hearing" and entered a TRO "that same day." *Id.* at 1175 & n.1. After another hearing on April 3, the district court partially stayed its TRO based on clarifications on the scope of public-health order and a new order (also issued April 3) extending abortion restrictions subject to the clarifications. *Id.* at 1175. After a third hearing on April 6, the district court entered a preliminary injunction on April 12. *Id.* at

5

1176. In denying Alabama's request for a stay pending appeal, this Court explained that issuing a preliminary injunction "to preserve the status quo and prevent the state from reverting to its initial and more restrictive interpretatio[n]" was within the district court's authority. *Id.* at 1179.

Here, by contrast, rather than moving for a TRO three days after SB185 became law, Plaintiffs waited *three months* to file their complaint. The preliminary injunction hearing and order in *Robinson* were 10 and 16 days, respectively, after the challenged action. The preliminary injunction hearing and order in this case were *113 and 119 days* after SB185 became effective. The preliminary injunction order here is also nothing like the one in *Robinson*, which merely prevented the state from reverting to a previously enjoined interpretation of a public-health order. Here, the district court enjoined a state law that had been in effect for almost four months by the time of the order and was actively being implemented (and, for many inmates, had been fully implemented). Doc.50.

Plaintiffs also attempt to excuse their months-long delay by noting that they sent Defendants a letter asking them not to implement SB185. *See* Opp.3 (citing Doc.11-21). But Plaintiffs cite no authority for the proposition that a plaintiff can justify a lengthy delay in filing a constitutional challenge to an in-effect state law merely by asking state officials not to follow the law.

6

**D. Plaintiffs cannot overcome the PLRA's limits on prospective relief.**

The PLRA requires that prospective relief "extend no further than necessary to correct the violation of the Federal right of a *particular plaintiff or plaintiffs*." 18 U.S.C. §3626(a)(1)(A) (emphasis added). Plaintiffs do not engage with this text, instead citing the Supreme Court's statement that PLRA relief "must be determined with reference to the constitutional violations established by the specific plaintiffs before the court." *Brown v. Plata*, 563 U.S. 493, 531 (2011); Opp.16. That language—which mirrors the statute's focus on individual inmates—supports Defendants, especially in a case where the Eighth Amendment also requires each plaintiff to show that the alleged denial of care meets the high standard for deliberate indifference. And although *Brown* involved class actions, the validity of class-certification was not at issue, much less "provisional" class-certification for the purpose of entering a preliminary injunction.

**E. Plaintiffs' forfeiture arguments are meritless.**

Plaintiffs assert that Defendants "failed to apply or defend their actions under the Eighth Amendment deliberate indifference [sic] before the district court." Opp.1 n.1. That would be news to the district court, which ruled on the merits without any suggestion of forfeiture. *See* Doc.50 at 28-41 ("Deliberate Indifference" subheading). It is also news to Defendants, who extensively cited and discussed deliberate indifference case law before both the district court and this Court. *See, e.g.*, Mot.3 (arguing that "[t]he failure to provide 'the more aggressive care that Plaintiffs demanded' is not deliberate indifference" (cleaned up)); *id.* at 13-14, 16 (citing *Hoffer*, 973 F.3d at 1272-73); *id.* at 10

7

(citing *Gibson v. Collier*, 920 F.3d 212, 223-24 (5th Cir. 2019)); *id.* at 11-12 (citing *Keohane*, 952 F.3d at 1278); Doc.25 at 6-16 (citing these decisions and more).

Plaintiffs further contend that the preliminary injunction hearing "involve[ed] only legal argument because Defendants did not dispute Plaintiffs' factual showing." Opp.3. That is also wrong. Defendants provided declarations from Plaintiffs' *treating physicians* explaining the care being given to Plaintiffs and the steps being taken to protect their physical and mental well-being. Docs.25-1, 25-2. Defendants also cited a systematic review (funded by WPATH) that acknowledges the poor evidentiary base underlying cross-sex hormonal intervention. Doc.25 at 14 (citing Baker, *et al.*, *Hormone Therapy, Mental Health, and Quality of Life Among Transgender People: A Systematic Review*, Journal of the Endocrine Society, 5(4) at 8 (2021), perma.cc/J7YN-LFG4). The suggestion that Defendants "did not dispute" Plaintiffs' factual arguments blinks reality.

Finally, Plaintiffs assert that Defendants did not raise delay as a reason not to grant the preliminary injunction. Opp.17. To the contrary, Defendants opened their opposition to the preliminary injunction motion by emphasizing that Plaintiffs waited "three months after [SB185] was enacted to file this suit." Doc.25 at 5. Defendants then raised this issue again at the hearing. Tr. 45:25-46:1 ("[W]hat they're asking for is no longer a status quo injunction. The time for that would have been May…. The state began releasing guidance in June. By July they had developed plans and started tapering."). And the district court expressly addressed Defendants' delay arguments in its

8

order, without any suggestion of waiver or forfeiture. *See* Doc.50 at 44-45; *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1194 (11th Cir. 2018).

Related to their forfeiture arguments, Plaintiffs contend that this motion is an improper attack on class certification. See Opp.15-16. But because the district court certified a provisional class for the purpose of granting a preliminary injunction, class certification is intertwined with the grant of injunctive relief and thus reviewable. *E.g.*, *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1387 n.26 (11th Cir. 1998).

## II. Defendants will be irreparably harmed in the absence of a stay.

Georgia is being irreparably harmed through its inability to effectuate a statute "enacted by representatives of its people." *Hand v. Scott*, 888 F.3d 1206, 1214 (11th Cir. 2018). Plaintiffs assert that a stay would cause them "physical and psychological harm." Opp.8. But, as the State explained, "declarations from Plaintiffs' treating physicians … discus[s] the care available to inmates, the protocols being used to responsibly implement SB185, and GDC's efforts to ensure that all inmates are closely monitored to ensure their safety and well-being." Mot.13 (citing Docs.25-1, 25-2).

## III. The balance of the equities supports granting a stay.

Plaintiffs argue that the balance of the equities favor them, and an injunction is in the public interest because SB185 is unconstitutional. Opp.9. But Defendants have made a strong showing that this Court will ultimately conclude Plaintiffs are wrong on

9

the merits. And it is in the public interest to allow Defendants to enforce a presumptively constitutional and democratically enacted state law. *See Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020).

At the preliminary injunction hearing, Defendants "made an oral motion for stay pending appeal" in the event the district court granted a preliminary injunction. Doc.50 at 2 n.1. The purpose of that request was to facilitate an "emergency appeal" to this Court. Tr. 48:19; *see also* 11th Cir. R. 8(a)(1). After the district court granted Plaintiffs' motion, Defendants filed their notice of appeal and moved for a stay pending appeal in this Court within two business days of the order. *See* Mot. The parties briefed that request expeditiously and Defendants' motion for stay is now fully briefed just 13 business days after the entry of the order from which Defendants seek a stay. *See* 11th Cir. R. 27(a). That timeline is comparable to the urgency shown by government defendants in non-death-penalty emergency appeals where this Court granted a stay. *See, e.g.*, *Friends of the Everglades, Inc. v. Sec'y, Dep't of Homeland Sec.*, 2025 WL 2598567 (11th Cir. Sept. 4) (10 business days).

Plaintiffs contend that there is no reason to rule expeditiously because Defendants labeled their motion as "time-sensitive" rather than "emergency." Opp.4 n.5. That is wrong. As Defendants explained, "the preliminary injunction inflicts irreparable harm by preventing [them] from effectuating a democratically enacted and presumptively constitutional state statute." Mot.4 (citing *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). And because Defendants have made a strong showing

10

that they will prevail on the merits, every day the injunction remains in place is another day during which absent class members experience a judicially mandated change in treatment that will ultimately require a second round of tapering if Defendants prevail on the merits. The PLRA's temporal limit on preliminary injunctive relief also justifies expeditious treatment. *See* 18 U.S.C. §3626(a)(2).

## CONCLUSION

This Court should grant Defendants' motion and issue a stay. At minimum, this Court should stay the injunction as to Benjamin, Madison, and all absent class members.

Dated: September 23, 2025                                    Respectfully submitted,

Christopher M. Carr                                          */s/ Jeffrey M. Harris*
 *Attorney General*                                          Jeffrey M. Harris
Stephen J. Petrany                                           Rachael C.T. Wyrick
 *Solicitor General*                                         Julius Kairey
Georgia Department of Law                                    Zachary P. Grouev*
40 Capitol Square SW                                         CONSOVOY MCCARTHY PLLC
Atlanta, Georgia, 30334                                      1600 Wilson Boulevard, Suite 700
404-458-3408                                                 Arlington, VA 22209
spetrany@law.ga.gov                                          (703) 243-9423
                                                             jeff@consovoymccarthy.com

*\*Supervised by principals of the firm admitted to practice in Virginia*

*Counsel for Defendants-Appellants*

11

## CERTIFICATE OF COMPLIANCE

This reply complies with Rule 27 because it contains 2,597 words, excluding the parts that can be excluded. It also complies with Rule 32(a)(5)-(6) because it is prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point and 16-point Garamond font.

Dated: September 23, 2025                                          /s/ *Jeffrey M. Harris*

# CERTIFICATE OF SERVICE

I filed this reply with the Court via CM/ECF, which will send a notice of docketing activities to all parties who are registered through CM/ECF.

Dated: September 23, 2025　　　　　　　　　　　　　　　　*/s/ Jeffrey M. Harris*